| **Wells Fargo Bank, N.A. v Lombardo** |
|:---:|
| 2024 NY Slip Op 32398(U) |
| July 15, 2024 |
| Supreme Court, Richmond County |
| Docket Number: Index No. 135022/2019 |
| Judge: Desmond A. Green |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND
-------------------------------------------------------------------------------X
WELLS FARGO BANK, N.A.,

                                Plaintiffs,

      -   against -

MICHELLE LOMBARDO A/K/A MICHELLE L. LOMBARDO,
KINA'OLE HAWAII KAI SOLAR, LLC, CITY OF NEW YORK
PARKING VIOLATIONS BUREAU, JUDITH LOMBARDO,
INDIVIDUALLY AND AS ADMINISTRATIC OF THE
ESTATE OF GARY LOMBARDO A/K/A GARY P.
LOMBARDO, JOHN DOE (REFUSED NAME) AS JOHN
DOE #1, JOHN DOE (REFUSED NAME) AS JOHN DOE #2,
JOHN DOE (REFUSED NAME) AS JOHN DOE #3, JOHN
DOE (REFUSED NAME) AS JOHN DOE #4, JOHN DOE
(REFUSED NAME) AS JOHN DOE #5,

                              Defendants.
-------------------------------------------------------------------------------X

Present:
**Hon. Desmond A. Green**

Index No. 135022/2019

**DECISION AND ORDER**

Motion Seq. No. 002

The Court considered the following papers associated with motion sequence 002, submitted on April 4, 2024:

                                           NYSCEF Document #:

**Notice of Motion (002) for Summary Judgment and Appointment of Referee**
By Plaintiff WELLS FARGO BANK, N.A., with Supporting Papers and Exhibits
(Dated October 27, 2023)..................................................................................77-126

**Affirmation in Opposition**
By Defendants MICHELLE LOMBARDO and JUDITH LOMBARDO, with Supporting Papers and Exhibits
(Dated February 20, 2024)…..........................................................................128-138

**Affirmation in Reply**
By Plaintiff WELLS FARGO BANK, N.A.
(Dated March 5, 2024)...........................................................................……................139

       In this residential foreclosure action, the plaintiff, WELLS FARGO BANK, N.A., (hereinafter

"WELLS FARGO"),  moves for an order granting summary judgment in its favor pursuant to CPLR §3212,

and striking the defendants' answer and counterclaims; granting an order of reference and appointing a

referee to determine the amounts due and owing, and whether the subject premises can be sold in parcels;

permitting treatment of defendants' answer as a limited Notice of Appearance entitling defense counsel to

[* 1]

receive, without prior notice, a copy of the Notice of Sale, Notice of Discontinuance and Notice of Surplus Monies, if any; determining that all non-appearing and non-answering defendants be deemed in default, and said defaults to be fixed and determined; amending the caption to rename the DOE defendants; and granting such other and further relief as this court deems just and proper. Defendants MICHELLE LOMBARDO and JUDITH LOMBARDO oppose WELLS FARGO's motion, and WELLS FARGO replies.

Upon the foregoing papers, plaintiff WELLS FARGO's motion is denied in its entirety.

The court's decision is outlined below.

## FACTUAL BACKGROUND

On May 21, 2015, MICHELLE LOMBARDO signed a note for a loan in the amount of $493,843.00, secured by the real property known as 2180 S. Railroad Avenue, Staten Island, N.Y. 10306, which she purchased together with her late father, GARY LOMBARDO, as tenants in common. MICHELLE LOMBARDO and GARY LOMBARDO executed and delivered to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for US Mortgage Corporation, a mortgage wherein they promised to repay the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note to the lender. The mortgage was signed on May 21, 2015, and recorded by the Richmond County Clerk on June 22, 2015. By Corporate Assignment of Mortgage executed on May 11, 2016, MERS assigned the mortgage to WELLS FARGO. The Office of the Richmond County Clerk recorded the assignment on May 27, 2016.

The subject property, a two-family home, was purchased as a primary residence with MICHELLE LOMBARDO occupying the downstairs unit with her three children, and her retired parents (GARY and JUDITH LOMBARDO) living in the upstairs unit. While pregnant with her third child, MICHELLE LOMBARDO began to suffer from back pain that rendered it difficult for her to continue working. Consequently, she was on disability and maternity leave from her former employment from November 2016 to July 2017, and was approved to receive disability benefits in 2018. As a result of this interruption in income, MICHELLE LOMBARDO fell behind on the mortgage payments.

[* 2]

By letter dated April 18, 2016, addressed to MICHELLE LOMBARDO at the subject premises, WELLS FARGO advised her that her mortgage loan was in default and an in-person meeting would be arranged to discuss her financial situation and mortgage payment assistance options that may help bring her account current. On February 28, 2018, a WELLS FARGO vendor visited the subject property to meet with the defendant and deliver a flyer, which encounter MICHELLE LOMBARDO "does not recall."

Between March 2, 2018 and December 11, 2018, WELLS FARGO communicated with the defendant regarding her loss mitigation options, decisions on loan modification applications, and subsequent appeals of those decisions.

By letter dated October 5, 2018, addressed to MICHELLE LOMBARDO and GARY LOMBARDO at 2180 S Railroad Ave, Staten Island, NY 10306-3714, the subject property address, a 90-day notice was sent in advance of the commencement of this action stating that the loan was in default, and included the amount due to cure the total delinquency. As recited in the affidavit of RICK PENNO ("PENNO affidavit"), Vice President Loan Documentation for plaintiff, (NYSCEF Doc. No. 78), "[s]uch notices were mailed pursuant to the names and addresses on such notices, to MICHELLE LOMBARDO and GARY LOMBARDO at 2180 S Railroad Ave, Staten Island, NY 10306-2714, the subject property address on October 9, 2018, with the mailing memorialized in WELLS FARGO's business records, and…in Track Right. Those records identify the notices by…certified mail tracking number 9314 7100 1170 0974 4007 41 and…first-class mail tracking number 2337624898, which [are] printed on the notices themselves…."

Furthermore, on December 8, 2018, a loss mitigation application was submitted on the defendants' behalf to plaintiff's counsel via email, and the following week, MICHELLE LOMBARDO was notified that she was ineligible for loss mitigation review.

Thereafter, on December 17, 2018, Staten Island Legal Services contacted a WELLS FARGO special escalation unit customer service representative on the defendants' behalf, and an escalation file was opened. On January 16, 2019, WELLS FARGO advised that a request was submitted for a retention review and file activation was expected by the following day.

[* 3]

With MICHELLE LOMBARDO having failed to cure the mortgage default prior thereto, on January 17, 2019, the plaintiff filed the summons and complaint initiating the instant foreclosure action. With assistance from Staten Island Legal Services, MICHELLE LOMBARDO and GARY LOMBARDO executed *pro se* answers to the complaint. In the meantime, the loss mitigation process continued.

WELLS FARGO offered MICHELLE LOMBARDO and GARY LOMBARDO a trial payment plan based upon an assumption-modification that was to begin in March 2019. Payments were made through the summer of 2019. However, GARY LOMBARDO, the assuming borrower, died on October 9, 2019, before the permanent modification papers could be executed.

In 2021, the plaintiff offered MICHELLE LOMBARDO a streamlined Covid-19 Recovery Modification which she declined. She then applied for a Covid-19 Recovery Modification in April 2022 and was offered a trial payment plan in June 2022 that she found unaffordable. At MICHELLE LOMBARDO's request, the plaintiff evaluated her for a Covid Recovery Modification with a 40-year amortization schedule, which came with a higher interest trial plan than that previously offered. MICHELLE LOMBARDO was unable to accept the September 2022 offer and did not have sufficient funds to make the back payments for the June 2022 offer. The matter was released from the conference part in November 2022.

By Order signed April 19, 2023, the plaintiff was granted leave to file and serve a Supplemental Summons, Amended Complaint, and Amended Notice of Pendency. MICHELLE LOMBARDO and JUDITH LOMBARDO filed *pro se* answers to the amended foreclosure complaint with counterclaims.

## PROCEDURAL HISTORY

Plaintiff commenced this action via the filing of a summons and complaint on January 17, 2019 (NYSCEF Doc. No. 1). On March 13, 2019, defendants MICHELLE LOMBARDO and GARY LOMBARDO joined issue by filing answers with affirmative defenses and counterclaims (NYSCEF Doc. Nos. 30 and 31, respectively).

By notice of motion (Motion #001) dated March 8, 2023, the plaintiff sought leave to amend the caption by adding JUDITH LOMBARDO, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE

ESTATE OF GARY LOMBARDO A/K/A GARY P. LOMBARDO as party Defendants, leave to remove party Defendants GARY LOMBARDO and FLEET NATIONAL BANK, and leave to serve and file an Amended Notice of Pendency, Supplemental Summons, and Amended Complaint (NYSCEF Doc No. 50). The plaintiff's motion was granted by order dated April 19, 2023 (NYSCEF Doc. No. 52).

The plaintiff served a supplemental summons and amended complaint (NYSCEF Doc. Nos. 55 and 56) on both MICHELLE LOMBARDO and JUDITH LOMBARDO, and on May 15, 2023, MICHELLE LOMBARDO served a *pro se* answer with counterclaims (NYSCEF Doc. No. 60). Similarly, on July 28, 2023, JUDITH LOMBARDO served a *pro se* answer with counterclaims (NYSCEF Doc. No. 74). The plaintiff served a reply to MICHELLE LOMBARDO's counterclaims on June 1, 2023, and to JUDITH LOMBARDO's counterclaims on July 31, 2023 (NYSCEF Doc. Nos. 71 and 75).

The remaining defendants did not answer or appear, and their time to do so has expired.

## DISCUSSION

Now, by motion dated October 27, 2023, WELLS FARGO BANK, N.A. moves for an order granting summary judgment in its favor, pursuant to CPLR §3212; an Order of Reference ordering the appointment of a referee to determine the amounts due and owing and whether the premises being foreclosed can be sold in parcels; an order permitting treatment of the defendants' respective answers as a limited notice of appearance entitling defense counsel to receive, without prior notice, a copy of the Notice of Sale, Notice of Discontinuance, and Notice of Surplus Monies, if any; an order determining that all non-appearing and non-answering defendants are in default, with defaults to be fixed and determined; an order amending the caption to rename the DOE defendants; and an order granting such other and further relief as this Court deems just and proper. It is essentially the movant's position that there fails to exist a question of fact that the loan is currently in default; the plaintiff complied with RPAPL §1304 and the notice provisions of the Mortgage, Real Estate Settlement Procedures Act ("RESPA") and the Fair Housing Act ("FHA"); the amount due on the loan; and the defendants' premature demand for attorney's fees.

Defendants' opposition to WELLS FARGO's motion is grounded in both the plaintiff's failure to make a *prima facie* showing of entitlement to summary judgment by providing business records that

[* 5]

establish the date of default, and strictly comply with the 90-day pre-foreclosure requirement under RPAPL §1304, which is a condition precedent to commencing a foreclosure action. The defendants further aver that there are triable issues of fact regarding their asserted affirmative defenses.

WELLS FARGO replied to the defendants' opposition maintaining that its *prima facie* right to foreclosure has been established along with its compliance with the "less stringent 'workable rule' standard" governing RPAPL §1304. The plaintiff additionally avers that there fail to exist any questions of triable facts regarding the affirmative defenses asserted.

Summary judgment is a drastic remedy that deprives litigants of their day in court, and it "should only be employed when there is no doubt as to the absence of triable issues." *Andre v. Pomeroy,* 35 NY2d 361 (1974); *Bonaventura v. Galpin,* 119 AD3d 625 (2d Dept 2014); *Stukas v. Streiter,* 83 AD3d 18 (2d Dept 2011). The function of the court on a motion for summary judgment is not to resolve issues of fact or to determine matters of credibility, but merely determine whether such issues exist. *Guadalupe v. New York City Tr. Auth.,* 91 AD3d 716 (2d Dept 2012); *Kolivas v. Kirchoff,* 14 AD3d 493 (2d Dept 2005). Importantly, in determining a motion for summary judgment, evidence must be viewed in the light most favorable to the nonmoving party. *Pearson v. Dix McBride, LLC,* 63 AD3d 895 (2d Dept 2009).

The proponent of a summary judgment motion is required to tender sufficient evidence to demonstrate the absence of any material issues of fact, and the failure to do so requires denial of the motion regardless of the sufficiency of the opposing papers. *Alvarez v. Prospect Hosp.,* 68 NY2d 320 (1986). Once the proponent of a motion for summary judgment makes a *prima facie* showing of entitlement to judgment as a matter of law, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial. *Young Hee Kim v. Handlesman,* 850 NYS2d 633 (2d Dept 200*); *McDonald v. Mauss,* 38 AD 3d 727 (2d Dept 2007).

As recited by both the plaintiff and defendants, to establish its *prima facie* entitlement to summary judgment in a mortgage foreclosure action, a plaintiff must produce the mortgage, the unpaid note, and evidence of the mortgagor's default (see *Wells Fargo Bank, N.A. v. Heiney,* 168 AD3d 1126 [2d Dept

[* 6]

2019]; *Flatbush Two, LLC v. Morales,* 190 AD3d 826 [2d Dept 2021]). A default is established by (1) an admission made in response to a notice to admit, (2) an affidavit from a person having personal knowledge of the facts, or (3) other evidence in admissible form (see *Bank of NY Mellon v. Gordon,* 171 AD3d 197 [2d Dept 2019]).

Even before demonstrating the existence of the mortgage, unpaid note, and the mortgagor's default, however, the mortgagee, as movant for summary judgment, must establish, *prima facie,* strict compliance with RPAPL §1304 notice to the borrower or borrowers as a condition precedent to the commencement of the foreclosure action. While here, the plaintiff has demonstrated, and the defendants have not refuted, the executed mortgage, unpaid note, and the mortgagors' default, this court finds that the movant has failed to sufficiently establish, *prima facie,* that it strictly complied with statutory mortgage default notice requirements prior to commencing the instant foreclosure action and for entitlement to summary judgment as a matter of law.

RPAPL §1304 (1) provides that "at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the borrower,…including mortgage foreclosure, such lender, assignee or mortgage loan servicer shall give notice to the borrower." Strict compliance with RPAPL §1304 notice to the borrower or borrowers is a condition precedent to the commencement of a foreclosure action. Here, as in *Deutsche Bank National Trust Company v. Roman Hennessy et al.,* 218 AD3d 740 (2d Dept 2023), the defendants are both borrowers for purposes of RPAPL §1304 and thus, were each entitled to RPAPL §1304 notice. Although both defendants were entitled to RPAPL §1304 notice, the plaintiff failed to establish that it sent a 90-day notice to each defendant in separate envelopes, as required by the statute. In fact, via the PENNO affidavit and copies of the letters, proof of filing statements, and Track Right screens annexed as Exhibit "F" (NYSCEF Doc. No. 84), the plaintiff illustrates and does not refute that single 90-day notices were addressed and sent to MICHELLE LOMBARDO and GARY LOMBARDO collectively, at the subject premises, in a single envelope identified by one certified mail tracking number (9314 7100 1170 0974 4007), and one first-class mail tracking number (2337624898).

[* 7]

Rather, the plaintiff erroneously relies on *Bank of Am., N.A. v. Kessler*, 39 NY3d 317 (2023), misinterpreting its holding to stand for the proposition that RPAPL §1304 is governed by a "workable rule" standard that is more akin to a substantial compliance standard rather than a "strict compliance" standard insofar as notice requirements in foreclosure actions involving multiple borrowers. *Kessler* addressed the issue of multiple notices contained within a single envelope, rather than the contents of a single envelope providing notice to multiple borrowers. In fact, the holding in *Kessler* permits the inclusion of additional notices or information that may help borrowers avoid foreclosure and is not false or misleading within the same envelope. It does not, however, extend to permitting notification to multiple borrowers collectively in a single envelope.

Where there are two or more borrowers, the plaintiff must separately mail the 90-day notice to each borrower (see *Wells Fargo Bank, N.A. v. Yapkowitz*, 199 AD3d 126 (2d Dept 2021). In *Yapkowitz,* the Appellate Division held that "[s]ince the legislature imposed strict mailing requirements aimed at ensuring notice and documenting the delivery of the 90-day notice, it would be difficult to imagine why the legislature would not also require the simple measure of separately addressing a 90-day notice to each of the borrowers." The Court further held that "the obligation to send all required notices 'in a separate envelope from any other mailing or notice' cannot be satisfied by including the required notice for each borrower in the same envelope (RPAPL 1304 (2). To permit a single notice jointly addressed to two or more borrowers and mailed in a single envelope to service in lieu of a separately mailed notice to each borrower would transform the requisite standard of compliance from 'strict compliance' to 'substantial compliance'" (*id*. at 136).

As delineated in *Yapkowitz*, the plaintiff is required to mail a 90-day notice addressed to each borrower in separate envelopes as a condition precedent to commencing the foreclosure action. Since WELLS FARGO addressed and mailed the statutorily prescribed notices to MICHELLE LOMBARDO and GARY LOMBARDO jointly rather than individually and separately, this court finds that the requirements of RPAPL §1304 were violated and the plaintiff has thus failed to meet its *prima facie* burden in establishing its entitlement to summary judgment and an order of reference.

[* 8]

Upon due consideration, the Court finds any remaining contentions of the parties to be moot and/or unavailing.

Accordingly, it is hereby,

ORDERED, that plaintiff WELLS FARGO's motion for an order granting summary judgment in its favor pursuant to CPLR §3212, and striking the defendants' answer and counterclaims; granting an order of reference and appointing a referee to determine the amounts due and owing, and whether the subject premises can be sold in parcels; permitting treatment of defendants' answer as a limited Notice of Appearance entitling defense counsel to receive, without prior notice, a copy of the Notice of Sale, Notice of Discontinuance and Notice of Surplus Monies, if any; determining that all non-appearing and non-answering defendants be deemed in default, and said defaults to be fixed and determined; amending the caption to rename the DOE defendants; and granting such other and further relief as this court deems just and proper is denied.

This constitutes the Decision and Order of the Court.

Dated: July 15, 2024

ENTER

Hon. Desmond A. Green, J.S.C.

**HON. DESMOND GREEN
JSC**

[* 9]